UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOROTHY B.,[1] | Case No. 2:19-cv-09954-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Dorothy B. ("Plaintiff") filed a Complaint on November 20, 2019, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on August 18, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff protectively filed for DIB and SSI on July 7, 2016, alleging disability commencing December 31, 2015. AR 15, 238-52. On September 19, 2018, after her applications were denied (AR 173-74), Plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 15, 32-71. On November 5, 2018, the ALJ issued a decision finding that, although Plaintiff had overcome the presumption of continuing non-disability based on a prior non-disability determination, she nonetheless was still not disabled under the Social Security Act ("SSA") and regulations. AR 15, 33. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 18. The ALJ found Plaintiff had severe impairments of: schizoaffective disorder; degenerative disc disease; degenerative joint disease; obesity; and carpal tunnel syndrome. AR 18. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 18), and she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b)[2]:

> [E]xcept no more than standing and/or walking four hours out of an eight-hour workday; no more than occasionally walk[ing] on

---

[2] "Light work" is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

>uneven terrain, climb[ing] ladders, and work[ing] around unprotected heights; requires a four point cane to walk; no more than frequent handling and fingering with her right dominant hand; no more than occasional postural activities; simple routine tasks; and no more than occasional contact with the public, coworkers, and supervisors.

AR 19.

Based on the VE's testimony, the ALJ found Plaintiff was unable to perform her past relevant work as a nurse aid. AR 23. The ALJ found that Plaintiff, at 51 years of age on the alleged disability onset date, is closely approaching advanced age. AR 24. The ALJ also found that she had a limited education but was able to communicate in English. AR 24.

The ALJ next considered that, if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the Medical-Vocational rules. AR 39. However, because Plaintiff's ability to perform all or substantially all the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 24. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including the light, unskilled jobs of: marker/labeler (DOT 209.587-034), photocopy machine operator (DOT 209.685-014), and mail clerk/sorter (DOT 209.687-026). AR 24. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date through the date of the decision. AR 25. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-5.

/ / /

/ / /

## II.
## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds.

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

/ / /

B.       **The Five-Step Sequential Evaluation**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See

Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues, reordered as (Jt. Stip. at 4):

Issue No. 1: Whether the ALJ properly evaluated Plaintiff's testimony; and

Issue No. 2: Whether the ALJ properly evaluated the opinion evidence of her treating psychologist.

### A. Subjective Symptom Testimony

In Issue No. 1, Plaintiff contends that the ALJ improperly assessed her hearing testimony. Jt. Stip. at 17-23, 27-28. Specifically, Plaintiff contends that her testimony is supported by the record, any inconsistencies in her subjective complaints are "part and parcel" of her personality disorders, and her daily activities were minimal and cannot serve as a reason for discounting her complaints. Id.

#### 1. Applicable Law

Where a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear

and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).[3]

### 2. Hearing Testimony

Plaintiff's testimony at the July 2018 hearing is summarized as follows. Plaintiff started hearing voices in 2012 that told her to do things. AR 35. She worked as housekeeper but quit in 2013 because she could no longer lift. AR 34. She developed knee problems in 2015. AR 36-37. She believes she could

---

[3] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r of Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020).

have worked before 2015 in a sitting job even with the voices, and she in fact looked for one, but not after her knee pain developed. AR 35-37, 50. She also has problems with her back, ankle, wrist, and right shoulder. AR 36-37, 45, 49.

Her knees restrict her ability to sit for long periods of time, as sitting causes aching and stiffness. AR 37, 49. She sees a doctor for her knee pain and is treated with Tylenol, which does not help. AR 38. She has also had pain from her shoulder to her wrist since 2015, which her doctor said was caused by arthritis, for which she takes Tylenol. AR 47, 49. She has constant numbness in her wrist and fingers, which causes problems grasping and holding things, such as cramping when she holds a pen in her fingers. AR 48.

Her doctor will not prescribe more pain medication because she takes mental-health medication. AR 38. She takes Abilify which reduces the frequency of the voices but makes it difficult to sleep at night and leaves her sleepy in the morning. AR 39, 46. She also has trouble sleeping because her mind races, and she thinks someone might be breaking into the house. AR 52-53. She attends group therapy weekly, and she has fallen asleep during sessions due to her fatigue. AR 52-53, 56-57. She has trouble concentrating and is forgetful. AR 53-54. She would have problems remembering her appointments if the doctor's offices or her sister did not remind her. AR 54-55

In the morning, she gets up and makes breakfast, such as cereal, bacon, eggs, and toast, then she lays back down for at least 30 minutes for a nap. AR 39, 53, 56. Then she gets up and does work around the house, such as cleaning or washing dishes. AR 40. After that she sits and thinks or talks with her sister. AR 40, 42. A friend helps her shop for food, either by taking her or shopping for her, and he helps her around the house. AR 40-41, 51. She can do laundry, but needs her friend to help lift. AR 41. She does not drive as her friend drives her. AR 40, 51. She sometimes has problems showering so she takes baths because they are easier. AR 55.

She lives by herself, but her daughter and her grandchildren live across the street and visit her. AR 34, 42. She does not care for the grandchildren; she just watches them when they visit. AR 42. Her daughter is a "major stress" because she suffers from bipolar disorder. AR 43-44. Her daughter still manages to take care of the kids despite having "fits." AR 44. Plaintiff at times takes her five-year-old granddaughter to school a block away. AR 43. She never told her doctor that she walks her granddaughter miles to school. AR 43. When asked how she can walk her granddaughter to school if she has difficulty walking, Plaintiff responded, "We get a ride there." AR 44. Plaintiff uses public transportation to see her psychologist, Doctor Yoshado Lang, twice a month. AR 45. However, she has problems using public transportation when there are too many people around. AR 51. This can cause a panic attack because she fears the people will bother or hurt her, or she might do something to them. AR 51-52. She has difficulty leaving the home because of this. AR 51.

She can walk for about 30 minutes, and then if she sits for a couple of minutes, she can walk for another 30 minutes. AR 47, 49. She has used a cane since 2015. AR 49-50, 56. The cane alleviates pain in her back, knees, and ankles. AR 50. She holds the cane with her right hand even though she has problems with that hand. AR 56, 65. She can sit for 15 minutes but then must get up after 15 minutes because of her knee pain. AR 47, 49. She can lift about 10 pounds and would have problems carrying that amount of weight. AR 55. She could not walk half of an eight-hour workday. AR 50. She does not think she could get to work five days a week because of her lack of sleep. AR 53.

### 3.   Analysis

The ALJ considered Plaintiff's testimony and other relevant subjective statements in the record (AR 20) and found her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of

[the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 37. Specifically, the ALJ found the following: (1) Plaintiff's testimony was inconsistent with her routine physical treatment; (2) she failed to follow treatment recommendations; (3) her testimony was inconsistent with objective findings; (4) her testimony was inconsistent with the consultative orthopedic examination; (5) she showed poor effort and a lack of cooperation during the consultative psychological examination; (6) she provided other inconsistent statements, including about why she left her prior job; (7) her testimony was inconsistent with her daily activities; and (8) her reports of mental-health symptoms were inconsistent. AR 20-22.

To start, the Court notes the ALJ did not reject Plaintiff's testimony in full, but found it "not entirely" consistent with the record and found Plaintiff was limited to less than a full range of light work, which necessarily credited much of Plaintiff's subjective complaints. AR 19. For example, the ALJ partially credited Plaintiff's subjective complains by requiring in the RFC a four-point cane to walk, limiting her to no more than frequently handling and fingering tasks with her right hand, limiting her to simple routine tasks, and limiting her contact with the public, coworkers, and supervisors. Id. However, as explained below, to the extent the ALJ did not further credit aspects of Plaintiff's testimony, she provided legally sufficient reasons for doing so.

First, the ALJ found Plaintiff received mostly routine physical treatment for transitory issues. AR 20. Indeed, Plaintiff testified her doctor treats her knee pain with Tylenol[4] and stated she has not received any treatment for her shoulder pain except Tylenol. AR 38, 47. Similarly, Plaintiff generally reported

---

[4] Tylenol is "an over-the-counter acetaminophen painkiller." Elizabeth S. v. Saul, 2020 WL 1433213, at *2 (N.D. Cal. Mar. 24, 2020). It relieves mild to moderate pain. Gomez v. Saul, 2019 WL 5721659, at *4 (E.D. Cal. Nov. 5, 2019).

during the administrative proceedings that she was treated with Tylenol or nothing for her physical ailments. AR 267 (disability report listing no medication for physical pain), 311 (function report listing no medication for physical pain), 322 (disability report listing no medication for physical pain), 698 (September 2016 consultative examination noting subjective physical complaints but that Plaintiff "is not currently receiving treatment"), 705 (June 2016 prescription for extra-strength acetaminophen). An ALJ may properly discount symptom testimony at odds with routine, conservative treatment. See Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (assessment of subjective complaints supported in part by evidence of conservative treatment consisting primarily of minimal medication, limited injections, therapy, and exercise); Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms controlled by medication); Medel v. Colvin, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (Tylenol is conservative treatment).

 Second, the ALJ observed progress notes in December 2017, March 2018, and April 2018, showed Plaintiff did not take Tylenol as recommended. AR 20. This is supported by the record and is a valid consideration. AR 827 (noting "[Plaintiff] even did not take Tylenol ES & complain[]s [of] pain sometime[s]," and did not take or take regularly her cholesterol and calcium medications), 835 (same), 845 (same); Molina, 674 F.3d at 1112 ("the ALJ may consider . . . unexplained or inadequately explained failure . . . to follow a prescribed course of treatment"); 20 C.F.R. §§ 404.1530, 416.930 (claimants must "follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work").

 Third, the ALJ found that the objective evidence after Plaintiff's prior unfavorable decision showed no more than mild degenerative changes. AR 20. "Although lack of medical evidence cannot form the sole basis for discounting

11

pain testimony," it is a factor that the ALJ can consider in her analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. Specifically, the ALJ discussed x-ray findings of (1) Plaintiff's left ankle in June 2016 (AR 396); (2) her wrists also in June[5] 2016 (AR 395-96); (3) lumbar area in December 2017 (AR 782-83); and (4) left knee in June 2018 (AR 781). AR 20. Plaintiff does not discuss or attempt to refute any of these findings. As they are supported by the record, the ALJ properly considered the inconsistency between Plaintiff's subjective symptom complaints and the lack of supporting objective findings as one of many other valid factors supporting the decision. See Burch, 400 F.3d at 681.

Fourth, the ALJ provided a detailed discussion of Plaintiff's September 2016 consultative examination with Dr. Jerry Chuang, including the mild and no-more-than-moderate findings. AR 20-21. Plaintiff does not discuss these findings and they are supported by the record. AR 699-702. As a result, the ALJ properly found these findings failed to support the degree of limitation Plaintiff alleged. AR 21; See Burch, 400 F.3d at 681; see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Reports of consultative physicians called in by the Secretary may serve as substantial evidence.").

Fifth, the ALJ discussed Plaintiff's May 2018 consultative psychological examination with Dr. Avezeh Chehrazi, and the ALJ concluded that she was "most persuaded by the evidence that [Plaintiff] has consciously attempted to portray limitations that are not actually present in order to increase the chance of obtaining benefits." AR 21-22. A claimant's demonstrably poor effort to "impede accurate testing of her limitations" may provide a legitimate basis for disbelieving her testimony. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.

---

[5] The decision indicates the x-rays were taken in July. AR 20. This appears to be a typographical error as the cited record states they were done in June. AR 395.

2002); Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (ALJ's adverse evaluation of claimant's testimony was supported by providers who evaluated claimant and observed that claimant "appeared not to exert adequate effort during testing"). Specifically, the ALJ pointed to findings in Dr. Chehrazi's examination that: (1) Plaintiff provided "suboptimal to poor" effort during testing, and she could not establish rapport (AR 709, 711-714); (2) Plaintiff reported audio hallucinations but could not elaborate (AR 710); (3) Plaintiff presented with "low level of energy" and "a slight attitude of disinterest" (AR 711); and (4) "test results appear[ed] to be a gross underestimation of [Plaintiff]'s functional level . . . due to problems with effort" (AR 713). AR 21-22. The ALJ's reasoning is amply supported by the record.

Sixth, the ALJ detailed several inconsistent statements by Plaintiff about why she stopped working. AR 22. Those ranged from telling the previous ALJ that she was terminated for threatening coworkers (AR 126), to telling an examining psychologist that it was due to difficulties related to supervisors (AR 721), to stating elsewhere that she stopped working because of work-place harassment (AR 710). As discussed above, she testified at the hearing that she quit her job because she could no longer lift, and, although she also started hearing voices shortly before that, they were not the reason she stopped working. AR 34-37. The ALJ properly found that these inconsistencies "undermine[d] the reliability of her statements." AR 22; See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (in assessing subjective complaints, an ALJ may consider prior inconsistent statements and testimony by the claimant that "appears less than candid"); Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because her testimony was undermined by her own admissions).

Seventh, the ALJ highlighted numerous activities of daily living that she believed were inconsistent with the ability to work. Those included Plaintiff

enjoying her relationship with her boyfriend, talking to her sister, and taking her granddaughter to school, the park, and movies. AR 21-22. However, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). A claimant's daily activities may be grounds for discounting testimony only "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions . . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Swanson v. Colvin, 2017 WL 8897144, at *21 (D. Ariz. Feb. 7, 2017) (claimant's daily activities of "simple meal preparation, light housekeeping, driving short distances, and caring for her children are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace" (internal quotation marks omitted)).

Relatedly, as an eighth and final reason, the ALJ noted in various portions of the decision other inconsistencies, including inconsistent reporting of symptoms, inconsistent reports of the nature of her audio hallucinations, and activities purportedly inconsistent with her testimony, such a pre-relevant-period progress note indicating Plaintiff reported depression but talked on the phone and laughed out loud in the waiting area. AR 21, 46. The Court need not decide whether reliance on Plaintiff's daily activities or the inconsistencies outlined in the seventh and eighth reasons were proper because any alleged

error would be harmless considering the other valid reasons for discounting the testimony. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, that is, routine physical treatment, failure to follow treatment recommendations, inconsistency with the objective evidence, inconsistency with the consultative examination, poor effort and lack of cooperation during the consultative psychological evaluation, and inconsistencies about quitting her job. Those grounds are sufficient to affirm the ALJ's decision on the issue.

**B.   Opinion Evidence**

In Issue No. 2, Plaintiff contends that the ALJ improperly assessed the opinion evidence[6] of her treating psychiatrist. Jt. Stip. at 4-12, 15-17.

**1.   Applicable Law**

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec.

---

[6] Plaintiff mentions two "reports" by Dr. Lang (Jt. Stip. at 4-5), but the first, dated May 23, 2017, was evaluated by "Student . . . Brandon Davis" and lists Dr. Lang as the "Supervisor." AR 719-25. The second is a check-box "Mental Impairment Questionnaire" completed by Dr. Lang on August 17, 2018. AR 925-28. The ALJ reviewed both in the decision. AR 21, 23. Accordingly, the Court refers to them collectively as Dr. Lang's "opinion" or "opinion evidence."

Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The ALJ must also consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R. §§ 404.1527(b), 416.927(b).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

As mentioned, the opinions of consultative physicians called by the Commissioner may serve as substantial evidence. Andrews, 53 F.3d 1035 at 1041. Further, the ALJ considers findings by State agency medical consultants and experts as opinion evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam).

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly,

an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. Finally, the ALJ is not required to recite "magic words" or "incantations" to reject an opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). "A reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." Id.; Towne v. Berryhill, 717 F. App'x 705, 707 (9th Cir. 2017) (citing Batson, 359 F.3d at 1193 (if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld)).

        2.      **Analysis**

Plaintiff's treating psychologist, Dr. Yoshado Lang, opined that Plaintiff would not be able to meet the competitive standards in most mental work domains. AR 23, 926-28. The ALJ acknowledged that Dr. Lang is a treating source, but she assigned little weight to her opinion based on Plaintiff's ability to take care of her granddaughter and interact well with her sister and family, and assigned greater weight to other opinions in the record. AR 23.

The ALJ conducted a proper assessment of the opinion evidence. Preliminarily, the Court notes that the ALJ did not reject Dr. Lang entirety. By assigning her opinion evidence "little" weight instead of "no" weight, the ALJ necessarily gave consideration and credited aspects of her opinion. AR 23. The ALJ conducted a detailed review of Plaintiff's mental-health records, and specifically took into account Plaintiff's mental limitations found credible and supported by the record. As mentioned, the ALJ fashioned an RFC that, among other restrictions, limited Plaintiff to simple routine tasks, and limited her contact with the public, coworkers, and supervisors. AR 19; See, e.g., Reddick, 157 F.3d at 725 (ALJ can satisfy substantial evidence requirement "by

setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that specifically included limitations tailored to claimant).

To the extent the ALJ did not accept the more-restrictive mental limitations in the opinion, she nonetheless properly assessed the opinion evidence. As mentioned, the ALJ discussed Dr. Chehrazi's consultative examination and was "most persuaded" by the evidence in the opinion that Plaintiff attempted to portray limitations not actually present and provided poor effort during the examination. AR 21-22. Later in the decision, the ALJ noted Dr. Chehrazi also opined that Plaintiff would have "no mental limitations," but gave that "less weight" due to Plaintiff's extensive therapy treatment. AR 23, 714. The ALJ also discussed the State agency medical consultant opinion by psychologist Dr. Brady Dalton. AR 141-72. Dr. Dalton reviewed the record and found Plaintiff had a history of schizoaffective disorder, was "stable on meds," and was responsive to therapy. AR 163. Dr. Dalton also found that Plaintiff remained capable of performing simple repetitive tasks. Id. The ALJ assigned the opinion "great weight." AR 23.

The ALJ properly assigned Plaintiff's treating opinion little weight in light of the conflicting consultative examination and State agency opinion, both of which concluded that Plaintiff's limitations were not preclusive of her ability to work. See Ford, 950 F.3d at 1156 (conflicting medical professional findings a valid consideration in discounting an opinion); Batson, 359 F.3d at 1197 ("[I]t was permissible for the ALJ to give [opinions] minimal evidentiary weight, in light of . . . opinions and observations of other doctors."). Contrary to Plaintiff's assertion that the ALJ "rejected" Dr. Chehrazi and served as her own expert (Jt. Stip. 11-12), the ALJ found Dr. Chehrazi's opinion persuasive albeit with less weight given to the finding that Plaintiff had no mental limitations, and

found the State agency opinion consistent with the record and entitled to great weight. Because those opinions are substantial evidence supporting the ALJ's assessment of the opinion evidence and the decision, the Court need not decide whether the other reason proffered by the ALJ—Plaintiff's involvement with her granddaughter and ability to interact with her family—is a valid reason for discounting the treating opinion. See Andrews, 53 F.3d 1035 at 1041; Saelee, 94 F.3d at 522; Ford, 950 F.3d at 1156 ("[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." (citation and internal quotation marks omitted)).

The Court finds that the ALJ did not err in her assessment of the opinion evidence. Accordingly, reversal is not warranted.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: September 22, 2020

_____
JOHN D. EARLY
United States Magistrate Judge